## MURPHY v. BOYT.

### No. 5595.

Court of Civil Appeals of Texas. Amarillo.
March 13, 1944.

Rehearing Denied April 24, 1944.

Price Daniel, of Liberty, for appellant.

Llewellyn & Dougharty, of Liberty, for appellee.

PITTS, Chief Justice.

On December 12, 1930, N. W. Murphy, appellant, as vendor, executed, acknowledged and delivered to E. W. Boyt, appellee, as vendee, a deed wherein and whereby appellant purported to convey to appellee 410.98 acres (which is often referred to in the record as 411 acres), being composed of 321.3 acres out of Washington County Railway Survey No. 3, being the East Half of said survey, and 89.68 acres out of Washington County Railway Survey No. 6, adjoining said East Half of Section 3 on the south, all located in Liberty County, Texas. Appellee filed this suit on October 4, 1937 alleging that as a result of a mutual mistake on the part of appellant and appellee when the field note calls in said deed were applied to the ground omitted a strip of land 804.4 feet in width on the north side of the East Half of Washington County Railway Survey No 3, resulting in the omission of 57 acres which appellant intended to convey and appellee intended to purchase.

As a part of the consideration for the conveyance of the said land which appellant understood he was conveying and appellee understood he was purchasing, appellee executed and delivered to appellant a series of vendor's lien notes, including notes Nos. 5, 6 and 7, aggregating a total principal sum of $1790, and concurrently therewith appellee executed for the benefit of appellant a deed of trust as further security for the payment of such notes.

This suit had its origin as a result of a notice of sale given by the trustee acting for appellant under the deed of trust executed by appellee for appellant's benefit at the time of the transaction in question. The suit was brought by appellee as plaintiff in the court below setting up his defense and praying for injunctive relief following the giving of said notice of sale by the trustee. Appellee alleged generally that as a result of a mutual mistake on the part of appellant as vendor and appellee as vendee a tract of 57 acres out of the land intended by such parties to be conveyed was omitted from the description of the field notes as contained in the deed actually executed and delivered. Appellee filed an amended petition on September 30, 1940 alleging all of the essential facts as hereinabove set out and prayed for a writ of injunction to issue to restrain the trustee's sale, for the cancellation of said notes due to the shortage as a result of the mutual mistake, and for the sum of $410.40 overpayment of interest due to said mutual mistake. He tendered into court, together with his original petition, the sum of $2750 in cash, the same being an amount in excess of the amount alleged in the trustee's notice of sale to be due on said notes and offered to do and perform any and all other acts and things which in the judgment of the court might be equitable in the premises. In consideration of such tender and the posting by appellee of a satisfactory bond, a temporary injunction was issued on October 4, 1937 by the trial court.

Appellant filed a sworn answer on September 30, 1940 denying the allegations of appellee and alleging that he had conveyed the full amount of 410.98 acres to appellee by field note description as the same had been surveyed and marked out on the ground and being the exact 410.98 acres which he had agreed and intended to convey; that he could not have conveyed and appellee could not have intended to purchase any land north of the field note description in the deed because he had already conveyed the land adjoining on the north (including the alleged omitted 57 acres) to J. M. Rich, who was agent for appellee in all of the instant purchase transactions; that appellee was in possession of the entire 410.98 acres and has been using it and leasing and conveying part of it for more than six years after learning of the alleged shortage of 57 acres on the north; and that appellee should not be entitled to judgment for cancellation of any of said notes on the allegation of mistake in describing the wrong land, without first offering or being required to account for and surrender that part of the 410.98 acres actually described and conveyed in the deed from appellant to appellee. Appellant also pleaded an estoppel and filed a cross-action for the

amount of the notes in the sum of $1790, interest and attorneys' fees.

The case was tried before the court without a jury on September 30, 1940 and judgment was entered nunc pro tunc on March 12, 1943, bearing date of September 30, 1940, cancelling vendor's lien notes Nos. 5, 6 and 7, aggregating $1790, and cancelling the deed of trust liens claimed by the appellant and making the injunction permanent. The judgment denied appellee's claim for $410.40 overpayment of interest except as to the extent of $80, which was offset against a balance of $80 remaining on the principal of said notes after deducting $1710 for the 57-acre shortage of land at $30 per acre. The judgment also denied the relief prayed for by appellant in his cross-action, from which judgment appellant perfected his appeal to the Court of Civil Appeals of the Ninth Supreme Judicial District at Beaumont and the same was transferred to this Court by the Supreme Court of Texas.

At the request of appellant the trial court filed findings of fact and conclusions of law which are, in effect, as follows: that on December 12, 1930 for a valuable consideration appellant deeded to appellee the East 321.3 acres of Section 3, and 89.68 acres of Section 6, both of Washington County Railway Survey, the latter tract joining the former on the south and both tracts described by metes and bounds in the deed of conveyance; that prior to the consummation of the trade appellee had not determined and did not know in person or through agent the location on the ground of the lines of Sections 3 and 6, and that in making the trade he believed and assumed that the deed conveyed to him the East 321.3 acres in Section No. 3 in full and the 89.68 acres in Section No. 6; that at the time of the trade appellant had not determined in person nor by agent the location on the ground of the lines of Sections 3 and 6; and that he made the conveyance under the assumption and belief that he was conveying to appellee the East 321.3 acres of Section No. 3, and 89.68 acres of Section No. 6, adjoining the said 321.3 acres on the south, both out of Washington County Railway Survey; that the description contained in the deed of the said East 321.3 acres of Section 3, when applied to the corners and objects called for, does not cover and include all of the said East 321.3 acres of Washington County Railway Survey No. 3, but omits a strip of land 804.4 feet wide on the north side of the East Half of said Section No. 3, which strip contains 57 acres of land; that by mutual mistake on the part of appellant and appellee the said strip 804.4 feet wide containing 57 acres, was omitted from the said description in the deed and that it was the intention of both parties, the vendor and the purchaser, to include all of the East 321.3 acres of the said Section No. 3. Other findings in detail in support of the above findings were made by the trial court, who further found that the contract price of the said East 321.3 acres fixed by agreement of the parties on December 12, 1930 was $30 per acre and that all of the said tract actually conveyed and intended to be conveyed was all of the same type and general character and each acre had the same relative value and that the price of $30 per acre was equal to or slightly in excess of the market value of the said land; that because of some questions of limitation to the title of the said 89.68 acres in Section 6, existing on December 12, 1930, the total purchase price of that tract was only $1000; that appellee had executed a deed of trust securing seven notes numbered from 1 to 7, inclusive, dated December 12, 1930, the first six of which being for $500 each and the seventh for $790, payable one note annually for the next succeeding seven years; that prior to September 15, 1937, appellee had paid to appellant only the first four of the said notes, leaving a balance of $1790 unpaid; that on September 15, 1937 appellee was served with notice to the effect that on October 5, 1937 the land in question described in the deed of trust would be sold to satisfy the unpaid balance of the purchase price; that thereafter appellee filed this suit and tendered into the trial court the sum of $2750, subject to its order, to protect appellant from any loss and prayed for a writ of injunction to restrain any sale of said land; that a writ of injunction was issued by the trial court on October 4, 1937 as prayed for and the $2750 was ordered held subject to the further orders of said court; that appellee paid all of the consideration stated in the deed except three notes aggregating the principal sum of $1790, and that he had paid interest on the $1790, whereas, he actually owed interest only on $80, due to the 57-acre shortage, the value of which was $1710; that there was an overpayment of interest made by appellee to appellant in the sum of $410.40 on the $1790, which

**202**

$410.40 appellee is entitled to offset as against the balance of $80 principal claimed by appellant.

Based upon its findings the trial court concluded as a matter of law that appellee was entitled to an abatement of the sum of $30 per acre for the 57-acre shortage in the said Section No. 3, due to a mutual mistake, making a total of $1710, and that appellee is entitled to a credit for the $410.40 overpayment of interest, which sum should be offset against appellant's claim for a balance of $80 principal due on the said notes, leaving a balance of $330.40 overpaid interest, but the said balance of overpaid interest in the sum of $330.40 is barred by the statute of limitation and appellee is not entitled to judgment for it. Judgment was rendered accordingly.

Appellant complains in nine points, some of which he briefs jointly, and since the first five of which make the same basic claims of error, we will consider them together. Appellant charges that the trial court erred in rendering judgment for appellee since the full 411 acres of land described in the deed and notes was all there according to survey; that there were no pleadings nor evidence of any shortage and no evidence of mutual mistake or of any intention to convey 57 acres adjoining the tracts described in the field notes in the deed in question.

A careful examination of appellee's pleadings reveal that they do support the judgment of the trial court.

The trial court found that the deed attempting to convey the East 321.3 acres of Section 3, Washington County Railway Survey, did not convey the full 321.3 acres but that there was a strip 804.4 feet wide containing 57 acres that the parties intended to include and convey but by mutual mistake did not include and convey. Appellant did not object nor except to these or any other findings of the trial court, which were made at his request. He did not assail any of them or charge that they were erroneous or untrue.

■ It is a well-established rule of law that for the purpose of judgment and review the findings of fact in a nonjury case have the force and effect of a jury verdict and must be accepted as true unless they are excepted to and assignments of error are shown by the record challenging them to be untrue. Beck v. Kouri et al., Tex.Civ.App., 158 S.W.2d 75; Roberson

et al. v. Red Bluff Water Power Control Dist., Tex.Civ.App., 142 S.W.2d 248; Whitis v. Penry et al., Tex.Civ.App., 41 S. W.2d 736; 41 Tex.Jur. 1274, sec. 399, and other cases cited by these authorities. Both appellant and this court are bound by the findings of the trial court, who found against appellant on the questions about which he complains and the first five points are therefore overruled.

Appellant complains in the sixth point that even if there had been a shortage in the land conveyed, there was neither proper pleadings nor evidence of the measure of damages to be applied and that the trial court erred in basing the measure of damages upon the agreed price per acre for the land rather than upon the difference between the consideration agreed to be paid and the value of the land actually conveyed.

■ We find appellee's pleadings sufficient to support his claims for recovery as prayed for.

There were two tracts of land described in one deed of conveyance and the parties intended to convey for separate considerations a part of Section 3 and a part of Section 6 of Washington County Railway Survey in one deed. There is no question raised about that part of Section 6, but the shortage claimed is in Section 3, which section we will consider separately as if it had been conveyed in a separate deed.

The trial court found that the price paid and agreed to be paid by appellee to appellant for the land included and intended to be included in the deed conveying a part of Section 3, was $30 per acre and it found that all of said land in Section 3 was "of the same general type and general character and that each acre thereof has the same relative value as every other acre thereof, and that the price of $30 per acre was equal to or slightly in excess of the market value of said land." Appellant is bound by the said finding of the trial court for the reasons heretofore stated. The trial court says, "The price of $30 per acre was equal to or slightly in excess of the market value of said land." A market value of $30 per acre for the land in question will be more favorable to appellant than any less amount fixed by the trial court would be. Then we will consider the market value at $30 per acre for the shortage of 57 acres. The total market value of the shortage is $1710, which the

trial court found it to be. The result would be the same if a calculation had been made as to the difference between the total consideration agreed to be paid and the value of the land actually conveyed since the agreed price was $30 per acre and the trial court found the market value to be $30 per acre and that the acreage was all alike and of the same character.

Appellant relies on the rule announced in the case of George v. Hesse, 100 Tex. 44, 93 S.W. 107, 8 L.R.A.,N.S., 804, 123 Am.St.Rep. 772, 15 Ann.Cas. 456, holding that the measure of damages is the difference between the consideration paid and the value of the land actually conveyed, and it seems to us that the trial court, in effect, followed that rule in the instant case. Although the calculation was made differently, the result was the same. However, it appears that the rule announced in the case of George v. Hesse, supra, has been supplemented, if not superseded, by an additional or a different rule in the case of Sibley v. Southland Life Ins. Co., Tex. Sup., 36 S.W.2d 145, 146; Reed v. Hester, Tex.Com.App., 44 S.W.2d 1107; and Denman v. Stuart, Tex.Sup., 176 S.W.2d 730, 732. The last case cited is a similar case to the instant case except there was an exchange of property in that case, but the measure of damages fixed because of the shortage of acreage was that agreed price per acre fixed by the parties at the time of the exchange, the same rule that appellant challenges in the instant case, and the court said: "Surely there can be no fairer, more equitable valuation placed on acreage which the parties to an exchange believe, in good faith, that one of them is getting but which, because of mutual mistake, he does not get, than that which they themselves fix in negotiating and consummating the trade."

We believe the result of the trial court's calculation to determine the value of the 57-acre shortage for the purpose of ascertaining how many, if any, of the notes in question should be cancelled was proper, regardless of which rule it followed in making the calculation, since both rules are approved by the Supreme Court and the result is the same either way the calculation is made. Appellant's sixth point is therefore overruled.

Appellant charges in the seventh point that appellee by his conduct, after learning of the shortage as a result of mutual mistake, has ratified the transaction and is estopped from recovery for such shortage due to such mutual mistake.

It seems that the trial court made no finding on the question of ratification by appellee of the transaction but it is a well-recognized rule that facts necessary to support the judgment of the trial court will be presumed to have been found by the said court provided there was evidence to support such a presumed finding and such a rule applies where there was no finding at all filed by the trial court as well as where there was a general finding in favor of the prevailing party as was done in the instant case. For the rule above referred to, we cite Krumb et al. v. Porter et al., Tex.Civ.App., 152 S.W. 2d 495, writ refused; Phillips et al. v. Minden Independent School Dist. et al., Tex. Civ.App., 152 S.W.2d 1114; 3 Tex.Jur. 1063, sec. 750, and other cases there cited.

The record discloses that appellee had a survey made in September, 1935 as a result of which the shortage and its location on the ground was finally determined; that following the discovery of the shortage appellee discussed the matter with the agent who handled the transaction for him and that the matter was discussed by appellee with the said agent and appellant several times without appellee obtaining any results and that he turned the matter over to his attorney, who filed suit on October 4, 1937, after appellee had been served with notice that the land in question was to be sold by the trustee.

There is ample evidence to support the presumed finding of the trial court against appellant and to the effect that appellee did not ratify the transaction with appellant and the seventh point of appellant is therefore overruled.

Appellant briefs his eighth and ninth points jointly and complains that appellee's cause of action, if any, was barred by the statutes of limitation.

The trial court sustained appellant's plea of limitation as to the $410.40 overpayment of interest by appellee except as to the $80 allowed as an offset on the balance of the principal appellee owed appellant and it is an elementary rule of law that such offsets are permitted even though a plea of limitation may be good.

Appellant's further complaint is predicated upon the theory that appellee holds 411 acres described in the deed and that he is contending further for land ly-

ing outside of the field notes contained in the deed, which theory is contrary to the findings of 'the trial court, by which appellant is bound. With reference to his further claim of limitation, the record discloses that this suit began as a result of the notice to appellee on September 15, 1937 that the land in question would be sold by the trustee on October 5, 1937 to satisfy the balance of the purchase price due on notes Nos. 5, 6 and 7, held by appellant, the same being the notes that are involved in this suit. Appellant's acts through the trustee caused the filing of this suit by appellee, whose petition for an injunction and claim for abatement were of a defensive nature. Therefore, the statute of limitation on the principal sum has no application since appellee is not asking to recover anything from appellant but is asking for injunctive relief and for the cancellation of notes executed as a result of a mutual mistake. Then appellant sought recovery in his cross-action on the same notes and certainly it would be inconsistent for him to insist on a plea of limitation now that appellee has prevailed.

In Morriss-Buick Co. v. Davis, 127 Tex. 41, 91 S.W.2d 313, 314, the Commission of Appeals in an opinion adopted by the Supreme Court, states the law applicable to such a situation as follows: "It is the law of this state that where the subject-matter of a defense interposed by the defendant constitutes an independent cause of action which does not go to the foundation of the plaintiff's demand, it cannot effect a reduction of the amount of the plaintiff's recovery except by way of set-off, and the statutes of limitation are available to the plaintiff in respect to such defense. Nelson v. San Antonio Traction Co., 107 Tex. 180, 175 .S.W. 434. *On the other hand, if the subject-matter of the defense be of an intrinsically defensive nature, which, if given effect, will operate merely as a negation of the plaintiff's asserted right to recover, or in abatement, either wholly or partially, of the amount claimed, the statute of limitation does not apply.* Mason v. Peterson, Tex.Com.App., 250 S. W. 142." (Italics ours.)

We also cite the case of Rosborough v. Picton, 12 Tex.Civ.App. 113, 34 S.W. 791.

In view of the facts in this case and the above authorities, appellant's eighth and ninth points are overruled.

After carefully examining the assignments of error and the record, we find no reversible error and the judgment of the trial court is affirmed.

### On Motion for Rehearing

In a motion for a rehearing appellant complains of the holding of this Court in the original opinion to the effect that both this Court and appellant were bound by the findings of the trial court and that such findings must be accepted as true unless they are excepted to and assignments of error are shown by the record challenging them to be untrue. Appellant contends that such rule does not apply since this was a non-jury case and no motion for a new trial was required and exceptions and assignments of error were not necessary, but we adhere to such ruling in considering appellant's motion for a rehearing. We think such is certainly the rule when no statement of facts has been filed and, in our opinion, such a rule should apply as well when an incomplete statement of facts has been filed.

In this case appellant requested findings of fact by the trial court and such were made and filed. Appellant did not except or object to them, did not ask for any further findings, nor did he challenge them anywhere in the record, but he did complain about them for the first time in his brief.

The certificate of the court reporter and the agreement of counsel approved by the trial judge disclose that the statement of facts in this case contained two volumes, namely, volume 1, containing pages 1 to 322, and volume 2, containing pages 323 to 657. Volume 1 has never reached this Court and the notices indicate that only one volume was filed in the Beaumont Court of Civil Appeals, from which court this case was transferred to us. We have no way of determining whether or not the findings of the trial court are supported by the evidence except for the admissions made against interest in the briefs and by checking as best we can against the testimony found in volume 2, which is available. In so far as we can determine from that part of the record before us it appears that the evidence supports the findings of the trial court. Under the circumstances, it is our opinion that if only one-half of the statement of facts is made available to us, such is equivalent to no statement of facts since there is no way for us to safely determine from an incomplete statement of facts whether or not the evidence supports the findings

of the trial court. It is therefore our opinion that the same rule would apply in this case wherein only an incomplete statement of facts has been filed as if no statement of facts had been filed. Authorities supporting such a rule have been cited in the original opinion.

We find that all matters raised in appellant's motion for rehearing have already been considered by us and we believe the case was properly disposed of in the original opinion. Appellant's motion for a rehearing is therefore overruled.