Waldie et al v. Cross 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-151-CV

     WALTER B. WALDIE, III, ET AL.,
                                                                                              Appellants
     v.

     FRANK CROSS, ET AL.,
                                                                                              Appellees
 

From the 95th District Court
Dallas County, Texas
Trial Court # 88-15277-D
                                                                                                    

O P I N I O N
                                                                                                    

      Walter Waldie III, Charles Durtschi, and their incorporated entities, Walter B. Waldie, III,
Inc. and Durtschi, Inc. (collectively "Waldie"), appeal from a $113,092.23 judgment rendered in
favor of Frank Cross and his incorporated entity, Frank Cross, Inc., as a final accounting of
Cross' share of a partnership among the three men. Tex. Rev. Civ. Stat. Ann. art. 6132b, §
22 (Vernon 1970). Waldie raises twenty-three points of error, alleging, among other things, that
Cross' claims were barred by the statute of limitations, that the judgment is not supported by
legally and factually sufficient evidence, that the court misapplied partnership law, and that the
court improperly admitted certain evidence. Cross raises three cross-points complaining of the
jury's failure to award sufficient attorneys' fees. We will affirm.
BACKGROUND
      Cross, Waldie and Durtschi are "free lance" court reporters. In 1973 Cross and Waldie
formed a partnership. Ten years later, Durtschi joined them, establishing the firm of Cross,
Waldie and Durtschi (the "partnership"). Later that same year, each individual formed a wholly-owned corporation and the corporate entities were substituted as the partners in the business. 
      Before the end of 1984 a rift developed between the partners, pitting Cross against Waldie and
Durtschi. In mid-December 1984, the problem came to a head, and Waldie told Cross that the
partnership was over. Although the partners were not on speaking terms after this confrontation,
they attempted to continue performing their court-reporting business activities. Each side,
however, took steps to inventory the partnership's assets and evaluate the value of the business. 
Waldie and Durtschi began to prepare for the creation of a new partnership between just the two
of them. Cross approached two other court reporters and arranged to form a new partnership with
them. By mid-February 1985, Cross entered into a new partnership agreement with the two new
court reporters and the three began to look for office space.
      On the evening of March 5 Cross and his two new partners moved Cross' personal furniture
from the partnership office to the new partnership's location. Cross also took the partnership's
1984 scheduling book and wrote himself a $12,000 check from the partnership's checking account,
an amount equal to one-third of the cash in the account. Shortly thereafter, Cross had the
partnership's phone number transferred to his new partnership.
      Although the parties attempted to settle the Cross, Waldie and Durtschi accounts, no
agreement was reached, and on December 6, 1988, Cross filed this suit individually and on behalf
of his corporation. Trial was had to a jury on Cross' third amended petition and two supplements
and Waldie's fourth amended answer. The jury found:
1.The partnership of Cross, Waldie, and Durtschi dissolved on March 5, 1985.
2.Cross exercised due diligence in obtaining issuance and service of citation on Waldie
and Durtschi.
3.The fair market value of Cross' one-third ownership interest in the Cross, Waldie
and Durtschi partnership on March 5, 1985, was $63,759.
4.The total amount of profit derived by Waldie, Durtschi, or their respective
corporations, from the use of Cross, Waldie and Durtschi's partnership property
after March 5, 1985, was $148,000.
5.Both Walter B. Waldie, III, Inc. and Charles Durtschi, Inc. failed to comply with the
partnership agreement.
6.The actual damages incurred by Cross as a result of Walter B. Waldie, III, Inc.'s
failure to comply with the partnership agreement was $31,879.50. The actual
damages incurred by Cross as a result of Charles Durtschi, Inc.'s failure to comply
with the partnership agreement was also $31,879.50.
7.Walter B. Waldie, III, acting individually, knowingly failed to account to Cross for
his partnership interest. Charles Durtschi, acting individually, also knowingly failed
to account to Cross for his partnership interest.
8.The sum of money which should be assessed against Walter B. Waldie, III,
individually, as actual damages for failing to account to Cross for his partnership
interest was $31,879.50. The sum of money which should be assessed against
Charles Durtschi, individually, as actual damages for failing to account to Cross for
his partnership interest was $31,879.50.
9.The jury failed to find that Cross was entitled to recover any exemplary damages
from the defendants.
      10. A reasonable fee for the necessary services of Cross' attorney in this case was as follows:
                  a.For preparation and trial$24,000
                  b.For an appeal to the court of appealsZero
                  c.For making or responding to an application for writ of
error to the Supreme Court of TexasZero
                  d.If application for writ of error is granted by the
Supreme Court of TexasZero
11.Walter B. Waldie III, Inc. was the alter ego of Walter B. Waldie III, individually.
12.Charles Durtschi, Inc. was the alter ego of Charles Durtschi, individually.
13.The jury failed to find that Cross had been guilty of laches in asserting his rights
under the partnership agreement or in filing the lawsuit.
After the jury verdict, the trial court entered its judgment as follows:
(1)That Frank Cross and Frank Cross, Inc. recover from all four defendants (Walter B.
Waldie III, Inc., Walter B. Waldie III, individually, Charles Durtschi, Inc., and
Charles Durtschi, individually), jointly and severally, the amount of $113,092.33 as
actual damages.
(2)That plaintiffs recover from all four defendants, jointly and severally, the amount of
$24,000 as reasonable and necessary attorney's fees.
(3)That plaintiffs recover from all four defendants, jointly and severally, prejudgment
interest of 10% per annum, compounded annually, on the actual damages from
March 5, 1985, until the date the judgment was signed, plus costs of court, post-judgment interest on all damages, costs, and attorney's fees at 10% per annum,
beginning on the date following the signing of the judgment, until the judgment is
fully satisfied. 
      (4)  That the defendants take nothing on their counterclaims against Cross. Likewise, the
defendants were denied any recovery of attorneys' fees in the event of an appeal to the
court of appeals or to the Supreme Court of Texas.
STATUTE OF LIMITATIONS
      At trial, Waldie claimed that the statute of limitations barred Cross' suit. He raises the claim
in related points two, three, four, and five. He argues that there is insufficient evidence to support
the jury's finding that the partnership dissolved on March 5, 1985. Waldie seeks to establish that
the partnership dissolved, at the latest, on December 17, 1984. If that is the date of dissolution,
then the date he was served with citation, January 26, 1989, falls outside of the four-year statute
of limitations and Cross would have had to establish that he exercised due diligence in effectuating
service. Waldie argues that, contrary to the jury's finding, the evidence is insufficient to establish
due diligence and, so, the judgment should be reversed.
      A cause of action for an accounting accrues "at the date of dissolution." Tex. Rev. Civ.
Stat. Ann. art. 6132b, § 43. The suit must be filed within four years of that date. Tex. Civ.
Prac. & Rem. Code Ann. § 16.004(c) (Vernon 1986). Dissolution is "the change in the relation
of the partners caused by any partner ceasing to be associated in the carrying on as distinguished
from the winding up of the business." Tex. Rev. Civ. Stat. Ann. art. 6132b, § 29. "Winding
up" the partnership consists of fulfilling its remaining obligations and the collection and
distribution of assets to the partners. Kelly Associates v. Aetna Cas. and Sur. Co., 681 S.W.2d
593, 597 (Tex. 1984).
      The court submitted the dissolution issue to the jury in question number one:
QUESTION NO. 1
State the date that you find that the partnership of Cross, Waldie & Durtschi
dissolved?
The dissolution of a partnership is the change in the relation of the partners caused
by any partner ceasing to be associated in the carrying on as distinguished from the
winding up of the business.
Answer by stating the date, month and year.
Answer: March 5, 1985 
      Other than the definition of dissolution from section 29, the charge does not define
dissolution. Tex. Rev. Civ. Stat. Ann. art. 6132b, § 29. Nor does the charge attempt to
explain the term "winding up" to the jury. "Where . . . the ground (of recovery or defense) is
submitted, however erroneously or incompletely, the parties are thereby put upon notice that the
jury's answers to the issues actually submitted will form the basis of the court's judgment
thereafter to be rendered thereon." Allen v. American National Insurance Company, 380 S.W.2d
604, 609 (Tex. 1964); see also Tubb v. Bartlett, 862 S.W.2d 740, 748 (Tex. App.—El Paso 1993,
writ denied); Martini v. Tatum, 776 S.W.2d 666, 670 (Tex. App.—Amarillo 1989, writ denied). 
Thus, we evaluate the sufficiency of the evidence with reference to the court's charge, not with
reference to the abstract principles of partnership law. See id.



      Because the statute of limitations is an affirmative defense, Waldie had the "burden to plead,
prove, and secure findings to sustain [his] plea of limitations." Woods v. William M. Mercer, Inc.,
769 S.W.2d 515, 517 (Tex. 1988) (emphasis added). As part of his burden, then, Waldie had to
establish when Cross' cause of action accrued. See Burns v. Thomas, 786 S.W.2d 266, 267 (Tex.
1990). Thus, we use the "matter of law" standard of review to evaluate Waldie's no-evidence
claim. Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989). To prevail on his no-evidence point, Waldie must show that there is no evidence supporting the jury's finding on
dissolution and, then, that his contrary position has been established as a matter of law. Id. To
decide the first issue, that of no-evidence to support the jury's finding, we will examine only the
evidence which supports the jury's finding and reject Waldie's claim if there is more than a
scintilla of supporting evidence. Id.; Juliette Fowler Homes v. Welch Associates, 793 S.W.2d
660, 666 & n.9 (Tex. 1990); Kindred v. Con/Chem, Inc., 650 S.W.2d 61, 63 (Tex. 1983). 
      Cross testified that the partners stopped doing business together as Cross, Waldie and
Durtschi on March 6, 1985; that, before that date, "our businesses were going on as usual"; and
that the partners "were still continuing the business of the partnership and trying to wind things
down" prior to his moving out of the office. When pressed to explain how the business was
continuing, he explained that the partners "were continuing to take jobs from all three clients. We
were continuing to send reporters on those jobs. We were continuing to pay the bills out of the
Cross, Waldie, Durtschi partnership. We were continuing to distribute accounts receivable. And
we were continuing to bill things out." Cross' attorney testified in response to cross-examination
concerning the law on dissolution. He claimed that the "proper date [of dissolution] is the date
on which the partners ceased doing business together as a partnership which, I believe Mr. Cross
has testified, was March the 5th of 1985." We conclude that Cross and his attorney provided
some evidence to support the jury's finding that on March 5, 1985, there was a "change in the
relation of the partners caused by any partner ceasing to be associated in the carrying on as
distinguished from the winding up of the business." Id. Thus, point two is overruled.
      By point three, Waldie claims that the evidence is factually insufficient to support the jury's
finding on the date of dissolution. In reviewing a factual-insufficiency claim, we consider all of
the evidence and determine if the challenged finding is so against the great weight and
preponderance of the evidence as to be manifestly unjust. Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986). Although all of the partners agreed that Waldie expressed his intention that
the partnership end in December 1984, given the language of the jury charge, we cannot say that
the jury's finding is against the great weight and preponderance of the evidence. Id. Thus, we
also overrule point three. Id.
      Our holding on points two and three moots points four and five. Waldie complains that the
evidence does not support the jury's finding that Cross exercised due diligence in obtaining service
of citation. However, because the statute of limitations began to run on March 5, 1985, Cross
obtained service within the four-year limitations period. Tex. Rev. Civ. Stat. Ann. art. 6132b,
§ 43; Tex. Civ. Prac. & Rem. Code Ann. § 16.004(c). Thus, due diligence is not an issue and
points four and five are overruled. See Gant v. DeLeon, 786 S.W.2d 259, 260 (Tex. 1990).
DIRECTED VERDICTS
      Prior to the court's charge to the jury, Cross successfully urged the court to grant a directed
verdict on Waldie's counter-claims for contribution and subrogation. Cross argued that Waldie's
claims were not asserted within the statute of limitations or within thirty days after he filed his
original answer. In point seven, Waldie recharacterizes his counter-claims as asserting a
"recoupment theory" and complains that the court improperly directed a verdict against him
because the statute of limitations does not operate against such a claim. Morriss-Buick Co. v.
Davis, 127 Tex. 41, 91 S.W.2d 313, 314 (1936); Bodovsky v. Texoma Nat. Bank of Sherman, 584
S.W.2d 868, 874 (Tex. Civ. App.—Dallas 1979, writ ref'd n.r.e.). However, in Texas, a claim
for recoupment must be predicated upon a factor that would vitiate a contract at the time the
contract was made. Southern Pacific Company v. Porter, 160 Tex. 329, 331 S.W.2d 42, 45
(1960); Murphy v. Canion, 797 S.W.2d 944, 947 (Tex. App.—Houston [14th Dist.] 1990, no
writ). Waldie claimed that any recovery by Cross should be reduced by the amount of the
partnership liabilities that Waldie had paid in excess of his proportionate share. These claims do
not meet the criteria for recoupment. Id. Waldie advances no other attack on the court's ruling
on his contribution and subrogation claims. Therefore we overrule point seven.
      The court also granted a directed verdict against Waldie on his defense of failure to mitigate
damages. When Cross moved for a directed verdict, Waldie argued:
The issue on that, Your Honor, is going to be the interest they're claiming. They
could have stopped the interest back at an earlier time, pure and simple. They're asking
for a hundred and some-odd thousand dollars in interest. Had they not delayed, and all
it is is use reasonable care to try and mitigate your damages, get your lawsuit filed, get
it started. It's one of the -- the biggest element in this lawsuit, their claim for interest,
Your Honor. And to allow Mr. Cross to sit and do nothing with any of the property for
a period of over four years and then come back and say: The interest on that is really
more than the property is worth, is a failure to mitigate.
The property could have been disposed of. He could have disposed of it. He could
have disposed of it earlier. He wouldn't have the claim for interest, not in the amount
he has. His failure alone is the failure to mitigate; not anything related to my client. 
And his failure to do that when he had both the right and the duty under the Partnership
Act is a failure to mitigate. That's a question for the jury to decide.
      By point eight, Waldie argues in this court that Cross failed to attempt to liquidate the
partnership himself and rejected Waldie's initial offers of payment, and, thus, failed to mitigate
his damages. As to Waldie's argument in the trial court, Cross was under no duty to file suit
within a certain period, except for the period imposed by the statute of limitations. The court has
no discretion to alter the amount of interest, and, so, neither does the jury. See Matthews v.
DeSoto, 721 S.W.2d 286, 287 (Tex. 1986). Thus, the court did not err by rejecting Waldie's trial
argument that Cross had the duty to mitigate the accumulation of interest. See id. 
      Concerning Waldie's argument that Cross could have mitigated his damages by accepting
Waldie's compromise offers or liquidating the partnership himself, Waldie, as the breaching party,
has the burden of demonstrating that the damages could have been mitigated by Cross "at a trifling
expense or with reasonable exertions." Great American Ins. Co. v. North Austin Mun. Utility
Dist. No. 1, 38 Tex. Sup. Ct. J. 817, 826, 1995 WL 358834 *11 (June 15, 1995). Cross had no
duty to accept unsatisfactory settlement offers so that Waldie's ultimate liability would be reduced. 
See Crum & Forster, Inc. v. Monsanto Co., 887 S.W.2d 103, 131 (Tex. App.—Texarkana 1994,
n.w.h.). There is no evidence in the record, except for the settlement offers by Waldie, that
would support a finding that Cross had the opportunity to liquidate the partnership at little expense
or with reasonable exertions. Great American, 38 Tex. Sup. Ct. J. at 826, 1995 WL 358834 at
*11. Thus, the court did not err when it directed a verdict against Waldie on his theory that Cross
failed to mitigate his damages. Point eight is overruled.
ORIGINAL ATTACKS ON THE JUDGMENT
      In points nine, ten, and eleven, Waldie argues that the court erred by awarding Cross damages
representing one-third of the profits derived from the use of partnership property because there
is no evidence to show that there was a continuation of the partnership business (point nine), that
there is no showing of what proportion of the profits were directly attributable to Cross's capital
investment (point ten), and that there is no evidence demonstrating that Cross elected to share in
the post-dissolution profits (point eleven). Tex. Rev. Civ. Stat. Ann. art. 6132b, § 42; Hughes
v. Aycock, 598 S.W.2d 370 (Tex. Civ. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.). 
However, Waldie does not point out in his brief where he raised these complaints before the trial
court. They were not raised in either his motion for a new trial or his motion for a judgment
notwithstanding the verdict and to disregard jury findings. Thus, we conclude that he has raised
these three complaints for the first time on appeal. 
      A no-evidence complaint must be raised in the trial court before it can be raised on appeal. 
Cecil v. Smith, 804 S.W.2d 509, 510-11 (Tex. 1991). "The erroneous rendition of a final
judgment is not fundamental error." Young v. Hodde, 682 S.W.2d 236, 237 (Tex. 1984). Thus,
all complaints about the final judgment must be brought to the attention of the trial court before
they can be raised in the court of appeals. Strahan v. Davis, 872 S.W.2d 828, 836-37 (Tex.
App.—Waco 1994, writ denied). Because Waldie failed to raise these complaints in the trial court
he may not urge them on appeal, and points nine, ten and eleven present nothing for review. Tex.
R. App. P. 52(a); Cecil, 804 S.W.2d at 510-11; Strahan, 872 S.W.2d at 836-37. Accordingly,
points nine, ten and eleven are overruled.
PREJUDGMENT INTEREST
      In points twelve and thirteen, Waldie complains that the court erroneously awarded Cross
prejudgment interest. Waldie argues that Cross was not entitled to the award because there was
no finding that the partnership business continued after the dissolution and because interest does
not begin to accrue until the amount owed on the partnership account is ascertained. Tex. Rev.
Civ. Stat. Ann. art. 6132b, § 42; Biggs v. First Nat. Bank of Lubbock, 808 S.W.2d 232, 238
(Tex. App.—El Paso 1991, writ denied). However, since 1985, "as a matter of law, a prevailing
plaintiff may recover prejudgment interest . . . on damages that have accrued by the time of
judgment." Cavnar v. Quality Control Parking, Inc., 696 S.W.2d 549, 554 (Tex. 1985)
(emphasis omitted). This holding applies "to a breach of contract action for unascertainable
damages." Perry Roofing Co. v. Olcott, 744 S.W.2d 929, 931 (Tex. 1988). As expressly
recognized by the court in Perry, Cavnar specifically overruled all other cases to the contrary. 
Id.; Cavnar, 696 S.W.2d at 554. Because Cross' suit is grounded on a written partnership
agreement, prejudgment interest is available even though the amount owed is not ascertainable
until the judgment is rendered. See id.; Atterbury v. Brison, 871 S.W.2d 824, 828 (Tex.
App.—Texarkana 1994, writ denied). Thus, points twelve and thirteen are overruled.
SUFFICIENCY OF THE EVIDENCE
      In points fifteen through twenty-two, Waldie attacks the sufficiency of the evidence to support
the jury's findings in questions 5, 6, 7 and 8, as listed above, in which the jury found that Walter
B. Waldie, Inc. and Charles Durtschi, Inc. breached the partnership agreement (question 5), that
Waldie and Durtschi, individually, failed to account to Cross for his partnership share (question
7), and that each defendant caused Cross to suffer $31,879.50 in damages (questions 6 and 8). 
Waldie attacks each finding under legal- and factual-sufficiency standards. However, in question
number 3, the jury also found that Cross' share of the partnership on the date of dissolution was
$63,759. The court's judgment awarded Cross $113,092.33, a sum equal to his share of the
partnership on the date of dissolution and a one-third share of the profits Waldie and Durtschi
gained by using partnership property after it ended. Waldie has not attacked the jury's finding on
the value of Cross' share of the partnership in question 3. Because the court's judgment is
supported by findings that Waldie has not attacked, independent of questions 5, 6, 7 and 8, his
challenges to the evidence supporting these questions are moot. See Lawson v. Lawson, 828
S.W.2d 158, 160 (Tex. App.—Texarkana 1992, writ denied); Kelly v. Klein, 827 S.W.2d 609,
611 (Tex. App.—Houston [14th Dist.] 1992, no writ); Texas Const. Service Co. of Austin v. Allen,
635 S.W.2d 810, 815 (Tex. App.—Corpus Christi 1982, writ ref'd n.r.e). Therefore, points
fifteen through twenty-two are overruled. 
      Alternatively, we find legally and factually sufficient evidence in the record to establish that
the Cross, Waldie and Durtschi partnership did exist, that the partnership ended, that Waldie and
Durtschi or their corporate entities were to "wind up" the partnership, and that they failed to settle
the partnership accounts with Cross. Juliette Fowler Homes, 793 S.W.2d at 666 & n.9; Kindred,
650 S.W.2d at 63. The record is replete with evidence tending to show that Waldie and Durtschi
used partnership property for their own gain without any attempt to pay to Cross his partnership
share. After examining the record, we conclude that the jury's finding that the partnership
agreement was breached and that Waldie and Durtschi failed to account to Cross for his share in
the partnership is not so against the great weight and preponderance of the evidence as to be
manifestly unjust. Pool, 715 S.W.2d at 635. Likewise, we find that the jury's finding on
damages is supported by the record. Juliette Fowler Homes, 793 S.W.2d at 666 & n.9; Pool, 715
S.W.2d at 635; Kindred, 650 S.W.2d at 63. Thus, Waldie's challenges also fail on their merits
and are, accordingly, overruled on these grounds as well.
JURY INSTRUCTION
      In his fourteenth point, Waldie complains that the court's instruction in question number 5
contained an erroneous statement of the law and constituted a comment on the weight of the
evidence. Question number 5, as answered by the jury, read:
Did Walter B. Waldie, III, Inc. or Charles Durtschi, Inc. fail to comply with the
partnership agreement?
You are instructed that in addition to the language of the agreement, the law imposes
in every partnership agreement a duty on each partner to act with the utmost good faith,
fairness and the most scrupulous honesty toward every other partner. Additionally,
partners who continue using partnership property have the legal obligation to account
to the departing partner the value of his interest on the date of dissolution.
Answer "Yes" or "No" with respect to each defendant.
Walter B. Waldie, III, Inc. Yes 
Charles Durtschi, Inc. Yes 
(Emphasis added).
      Waldie argues that the italicized portion of the instruction relates to a nonexistent "duty to
account" and was not necessary to the jury's resolution of the question presented. Contrary to
Waldie's assertion, a partner does have a duty to account to his former partners as part of the
"winding up" and liquidation of a dissolved partnership. Tex. Rev. Civ. Stat. Ann. art. 6132b,
§ 21(1); Champion v. Mizell, 38 Tex. Sup. Ct. J. 331, 331, 1995 WL 92835 *1 (March 2, 1995). 
Thus, the instruction is not an incorrect statement of the law. Moreover, "error in the submission
of an issue is harmless when the findings of the jury in answer to the other issues are sufficient
to support the judgment." Texas Const. Service, 635 S.W.2d at 815. Therefore, for the reasons
stated in the discussion of points fifteen through twenty-two, this point is also moot. For these
reasons, point fourteen is overruled.
ADMISSION OF EVIDENCE
      Points one and six relate to the court's admission of evidence. In point one, Waldie complains
that the court improperly admitted evidence of settlement offers exchanged by Cross and Waldie
during the first two months of 1985. In mid-January 1985 Waldie offered to settle the partnership
accounts by paying Cross $25,000 in cash, $36,000 over three years at $1,000 a month, and
assigning certain property to Cross. Cross responded to this offer in early February, stating that
he would accept $65,000 in cash, transfer of the partnership's telephone number, and assignment
of an investment property as settlement of the account. In this counter-offer, Cross valued his
share of the partnership at $64,085.00. The court admitted the two settlement offers over
Waldie's Rule 408 objection. Tex. R. Civ. Evid. 408. The court also admitted three follow-up
letters between the parties' attorneys that discussed the parties' positions with regard to the
partnership. 
      Waldie argues that the settlement offers were admitted in violation of Rule 408 of the Rules
of Civil Evidence, which provides: 
Compromise and Offers to Compromise
Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or
offering or promising to accept, a valuable consideration in compromising or attempting
to compromise a claim which was disputed as to either validity or amount is not
admissible to prove liability for, or invalidity of, the claim or its amount. Evidence of
conduct or statements made in compromise negotiations is likewise not admissible. This
rule does not require the exclusion of any evidence otherwise discoverable merely
because it is presented in the course of compromise negotiations. This rule also does not
require exclusion when the evidence is offered for another purpose, such as proving bias
or prejudice or interest of a witness or a party, negativing a contention of undue delay,
or proving an effort to obstruct a criminal investigation or prosecution.
Id. 
      Cross first argues that the offer and counter-offer were not part of a settlement negotiation
and, thus, were not subject to Rule 408. We reject this theory. Howell v. Bowden, 368 S.W.2d
842, 849 (Tex. Civ. App.—Dallas 1963, writ ref'd n.r.e). These documents are clearly offers to
settle the dispute over the partnership. Id. However, we conclude that the court did not commit
reversible error by admitting these settlement documents for three reasons. 
      First, Waldie's complaint has been waived. Although Waldie objected to the admission of
the settlement documents themselves, he failed to object to several other instances when testimony
was received regarding the parties' attempts to settle their dispute. Cross testified without
objection that Waldie conceded that he "owed me the money but that he and [Durtschi] could not
afford to pay me." Cross introduced his attorney's letter relating to the negotiations, again without
objection. Waldie cross-examined Cross regarding the settlement offers and testified on direct
examination about the documents and negotiations. Although Waldie could defend himself from
the evidence by explaining, rebutting or impeaching the evidence without waiving his objection,
we believe that he exceeded this license by the scope and nature of his examination regarding the
documents. Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 4 (Tex. 1986). Finally, Waldie
introduced on his own initiative two of his attorney's letters, which also did not have the effect of
defending himself against the settlement evidence introduced by Cross. Thus, Waldie's complaints
about the admission of the documents have been waived. See Haney v. Purcell Co., Inc., 796
S.W.2d 782, 788 (Tex. App.—Houston [1st Dist.] 1990, writ denied); Rural Development, Inc.
v. Stone, 700 S.W.2d 661, 667 (Tex. App.—Corpus Christi 1985, writ ref'd n.r.e.). 
      Second, offers to compromise are admissible if offered for some purpose other than showing
liability for, or invalidity of, the claim or its amount. Tex. R. Civ. Evid. 408. Here, the
evidence relating to the settlement tends to show that Waldie and Durtschi assumed the obligation
of "winding up" the partnership. Thus, the evidence support's Cross claim that Waldie breached
a duty owed him as his partner. Tex. Rev. Civ. Stat. Ann. art. 6132b, § 21(1); Champion, 38
Tex. Sup. Ct. J. at 331, 1995 WL 92835 at *11. Additionally, Waldie relied almost exclusively
on this evidence in support of his complaints regarding the court's action in directing a verdict
against him on his defense of failure to mitigate damages. Although a failed theory, this is a
second purpose for which this evidence was attempted to be used. Because the evidence is
relevant to issues other than liability on and the amount of Cross' claim, it was admissible.
      Finally, we reject Waldie's complaints because we find that the court's admission of the
evidence did not effect the jury's verdict. Tex. R. App. P. 81(b)(1). Cross presented testimony
from an expert witness who testified that the value of Cross' share of the partnership at dissolution
was $63,759. Cross introduced into evidence the witness' report which showed the basis for the
conclusion. The jury adopted this witness valuation, exactly, finding that Cross' share of the
partnership at dissolution was $63,759. Thus, the jury did not refer to the range of value
contained in the settlement documents, but opted to follow Cross' expert witness' valuation. 
Therefore, if the admission of the settlement documents was error, it was harmless error. Id. For
all three reasons, point one is overruled.
      By point six, Waldie complains that the court allowed Cross to elicit testimony from a witness
whom Cross had failed to designate in response to a proper interrogatory. Tex. R. Civ. P. 215.5;
Gee v. Liberty Mut. Fire Ins. Co., 765 S.W.2d 394, 395 (Tex. 1989). Over Waldie's objection
that Cross had failed to indicate that the witness would testify about service of citation, the court
allowed Cross to adduce evidence from one of his prior attorneys concerning the attorney's efforts
to have the citation served. We agree with Waldie that the court erred when it allowed Cross to
examine this witness concerning this subject. Id. However, "we must review the entire record
to determine whether the judgment was controlled by the testimony that should have been
excluded" to determine if the court's error was harmful. Gee, 765 S.W.2d at 396. Because the
testimony goes to the issue of due diligence in securing service of citation, an issue which has been
mooted by the jury's finding on the date of dissolution as discussed in connection with points two
through five above, the judgment is not controlled by the testimony which should have been
excluded. Id. Therefore, we overrule point six.
WALDIE'S FINAL POINT
      In point twenty-three, Waldie complains that the court rendered judgment against a non-existent entity, Charles Durtschi, Inc. Apparently, Durtschi's corporate name was Durtschi, Inc.,
without reference to his first name. However, we find that this error is harmless. Tex. R. App.
P. 81(b)(1). Thus, point twenty-three is overruled.
CROSS'S CROSS-POINTS
      In three cross-points, Cross complains that the jury awarded him only $24,000 in attorney's
fees. Cross' attorney testified that reasonable and necessary attorney's fees for the law suit would
be $48,000 for preparation and trial, $10,000 if the case is appealed to the court of appeals,
$5,000 if an application for writ of error is filed in the Supreme Court of Texas, and $3,500 if the
application for a writ of error is granted. Waldie's attorney testified that reasonable and necessary
fees would be $20,000. The jury's award is within the range of the evidence. Thus, we will not
disturb its decision. Juliette Fowler Homes, 793 S.W.2d at 666 & n.9; Pool, 715 S.W.2d at 635;
Kindred, 650 S.W.2d at 63. Cross' three cross-points are overruled.
DISPOSITION
      Having overruled Waldie's twenty-three points of error and Cross' three cross-points, we
affirm the judgment.
                                                                                 PER CURIAM
 

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed October 11, 1995
Do not publish